**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARRY LAMON, | No. CIV S-03-0423-FCD-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| C.K. PLILER, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, brings this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the fourth amended complaint filed August 7, 2006. The following defendants are named: Pliler, Hawthorne, Murphy, Lytle, Loredo, and Scicluna. Pending before the court is the motion to dismiss filed by defendants Pliler, Hawthorne, Murphy, Lytle, and Scicluna (Doc. 127) based on failure to exhaust available administrative remedies prior to filing suit. Defendant Loredo has filed a joinder to the motion.

/ / /

/ / /

/ / /

# I. BACKGROUND

## A. Procedural History

On July 21, 2006, the court issued an order which, among other things, outlined the scope of this action in light of the court's prior orders. Specifically, the court stated:

> As revealed by the court's prior orders, at best plaintiff has alleged the following claims in the various complaints filed in this action to date: (1) a Free Exercise claim based on plaintiff's allegations that he was prevented from practicing his religion when he was not provided a vegetarian diet; (2) an Eighth Amendment claim based on plaintiff's allegations that, upon his initial transfer to CSP-Sacramento, he was not interviewed by psychiatric staff before being placed in the B-facility; (3) an Eighth Amendment claim based on plaintiff's allegations concerning a subsequent move to a different cell; (4) an Equal Protection claim arising from the cell move; and (5) a Due Process claim based on destruction of plaintiff's personal property. By order issued on June 10, 2004, this action was determined appropriate for service on the following ten defendants: Pliler; Vance; Hawthorne; Turner; Murphy; Lytle; Loredo; Paul; Scicluna; and Sherbourne. Between August 12, 2004, and September 21, 2004, each of these ten defendants waived service.

The court further stated:

> Because the fourth amended complaint filed on April 10, 2006, exceeds the scope of permissible amendment, it shall be stricken. Plaintiff will be directed to file a new fourth amended complaint, naming only those defendants currently in the action (i.e., defendants Pliler; Vance; Hawthorne; Turner; Murphy; Lytle; Loredo; Paul; Scicluna; and Sherbourne), and alleging no new claims. Consistent with the court's prior orders, any unexhausted claims should not be raised.

Finally, the court cautioned that a fourth amended complaint exceeding this scope would be subject to dismissal for failure to comply with court orders. See Local Rule 11-110. Pursuant to the court's orders, plaintiff filed a new fourth amended complaint (Doc. 113) on August 7, 2006, naming defendants Pliler, Hawthorne, Murphy, Lytle, Loredo, and Scicluna.[1]

///

///

///

---

[1] A duplicative fourth amended complaint filed on August 14, 2006, was stricken.

B. **Plaintiff's Claims**

In the fourth amended complaint, plaintiff states that he has a long and well-documented history of mental health treatment and that he was a participant in the prison "Mental Health Delivery System." Plaintiff alleges that, prior to August 14, 2002, defendants Loredo, Murphy, Lytle, and Scicluna were aware that he was a high risk for suicide attempts. According to plaintiff, on August 14, 2002:

> . . . [Defendant] Scicluna had me involuntarily moved from my assigned cell . . . to [another cell] solely as a favor for another inmate and, when I refused to comply, Defendants Lytle, Murphy, and Scicluna had me physically overwhelmed, shackled hand and foot, and physically dragged from the housing area and deposited in a security holding cage.

Plaintiff says that he was left in the holding cell for over two hours, with the shackles "applied so tightly . . . that my hands and feet were swollen and my wrists and ankles were visibly cut and bleeding." Plaintiff alleges that he complained to defendants Lytle, Murphy, and Scicluna of pain caused by the shackles, but that they refused to loosen the restraints and instead "made racist, derogatory, and threatening comments." Plaintiff states that, as the pain became worse, be shouted to defendants Lytle, Murphy, and Scicluna that he needed to see a prison psychologist because he was feeling suicidal.

Plaintiff claims that defendant Loredo arrived later in the day and was briefed by the other defendants that plaintiff had been "trying to get mental health involved all morning." Plaintiff states that he was finally escorted back to the cell to which defendant Scicluna originally wanted him moved. According to plaintiff, while he was being moved he shouted that he was going to kill himself and that defendant Murphy responded: "Go ahead. Do us the fucking favor." Plaintiff states that defendant Loredo responded: "That's just gonna get you dead. It still won't get your cell back."

///

///

///

3

1  Plaintiff states that there was no legitimate penological reason to justify the "non-necessary cell-change."  He also states that "Defendants Murphy, Lytle, Loredo, and Scicluna denied me access to doctor-prescribed and readily-available mental health and medical services by refusing to call a doctor(s)."  Plaintiff states that defendants acted despite their knowledge that he was a high risk for suicide attempts.  Plaintiff alleges the following injuries caused by defendants' conduct: (1) physical injuries to his wrists and ankles caused by the shackles; (2) carbon monoxide poisoning resulting in headaches; (3) minor burns; (4) loss of personal property caused by the cell change; (5) mental decompensation and stress; and (6) loss of constitutional rights.  As to legal claims, plaintiff specifically states that defendants Lytle, Murphy, Loredo, and Scicluna "caused unnecessary and wanton infliction of pain and physical injury. . ." and asserts a claim against these defendants under the Eighth Amendment.

Plaintiff also claims that he was denied a religious diet.  Specifically, plaintiff alleges that defendants Pliler and Hawthorne were implementing a policy to deny "any kind of diet modifications based on religious need."  Plaintiff states that he lost more than 50 pounds as a result of a lack of access to religiously acceptable meals.  Based on these facts, plaintiff asserts a claim against defendants Pliler and Hawthorne under the First Amendment.

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss for lack of exhaustion of administrative remedies is properly the subject of a motion to dismiss as an unenumerated motion under Federal Rule of Civil Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleading and decide disputed issues of fact."  Id. at 1119-20.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice.  See id. at 1120.

///

### III.  DISCUSSION

In their motion to dismiss, defendants raise two related arguments.  First, they contend that plaintiff failed to exhaust administrative remedies as to the claims raised in the fourth amended complaint.  Second, defendants argue that, because plaintiff persists in presenting unexhausted claims, the fourth amended complaint exceeds the scope of amendment allowed by the court's orders and, therefore, should be dismissed as an appropriate sanction.  Because the court cannot conclude whether the fourth amended complaint exceeds the scope of amendment allowed by the court's orders until it first determines whether the claims are, in fact, unexhausted, defendants motion presents the single question of whether the claims are exhausted.  If they are, then both of defendants' arguments fail.  If the claims are not exhausted, then defendants' are correct that the complaint should be dismissed.

Initially, the court must determine which claims are being asserted in the operative fourth amended complaint.  As outlined above, plaintiff claims that defendants Lytle, Murphy, Loredo, and Scicluna "caused unnecessary and wanton infliction of pain and physical injury. . ." during the August 14, 2002, cell extraction and asserts a claim under the Eighth Amendment.  This claim appears to have two components.  One aspect of the claim relates to plaintiff's allegations that he sustained physical injuries.  Plaintiff also asserts that defendants ignored risks to his health.  In addition, plaintiff alleges a claim under the First Amendment based on denial of religious meals.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 127

5

1  S.Ct. 910 (2007), and held: (1) prisoners are not required to specially plead or demonstrate
2  exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be
3  pleaded and proved by the defendants; (2) an individual named as a defendant does not
4  necessarily need to be named in the grievance process for exhaustion to be considered adequate
5  because the applicable procedural rules that a prisoner must follow are defined by the particular
6  grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire
7  complaint if only some, but not all, claims are unexhausted.

8       A prison inmate in California satisfies the administrative exhaustion requirement
9  by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of
10 Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or
11 policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code
12 Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed through several
13 levels of appeal: (1) informal resolution; (2) formal appeal; (3) second level appeal to institution
14 head; (4) third level appeal to the director of the California Department of Corrections and
15 Rehabilitation.  A decision at the third formal level, which is also referred to as the director's
16 level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal.
17 Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may
18 summarily deny a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§
19 3084.3(c)(6) and 3084.6(c).   If a group of inmates intend to appeal the same decision or action,
20 one grievance form is used and a list of the participating inmates must be attached.  The list must
21 be legible and state the inmates' names, departmental identification numbers, and housing
22 assignment.  The form must also be signed by all participating inmates.  Currently, California
23 regulations do not contain any provision specifying who must be named in the grievance.
24 / / /
25 / / /
26 / / /

### A. First Amendment Claim

As to plaintiff's First Amendment claim based on religious meals, on February 1, 2005, the court issued findings and recommendations addressing this claim as alleged in the third amended complaint and concluded: "Plaintiff did satisfy the exhaustion requirement with respect to his claim of special dietary needs against defendants Pliler and Hawthorne." The findings and recommendations were adopted in full on April 28, 2005. Defendants now argue that, because plaintiff's inmate grievances did not specifically name defendants Pliler and Hawthorne, he did not satisfy the administrative exhaustion requirement as to those defendants. This argument is foreclosed by Jones given that California's prison grievance process does not contain such a requirement. Moreover, given the court's prior rulings in this case, it has already been determined that plaintiff has exhausted this claim.

### B. Eighth Amendment Claims

Defendants also argue that plaintiff "did not file, nor exhaust an administrative grievance having to do with his excessive force or denial of medical/mental health care claims." Plaintiff's Eighth Amendment claims were also addressed in the February 1, 2005, findings and recommendations. The court held that "plaintiff did not exhaust administrative remedies prior to filing suit for his claims of deliberate indifference . . . ." In the fourth amended complaint, plaintiff alleges exhaustion by referring to two inmate grievances – one filed on April 29, 2002, and the other on September 2, 2002. In support of their current motion to dismiss, defendants have provided the court with authenticated copies of the prison's logs for these grievances.

In the grievance filed on April 29, 2002, plaintiff complained that his religious dietary needs were not being met. There are no assertions of excessive force or denial of medical care. This grievance, therefore, clearly relates to plaintiff's First Amendment claim. In the September 2, 2002, grievance, plaintiff stated that, on August 14, 2002, he attempted suicide by setting his cell on fire. He also stated that correctional officers told him the contents of his cell were destroyed. The foregoing is consistent with defendants' description of this grievance

as outlined in their brief.

Defendants, however, do not outline a number of additional assertions made by plaintiff in the September 2, 2002, grievance. Plaintiff stated in this grievance that he has mental health problems and was in the prison crisis unit at one point. He stated that, notwithstanding this history, which was well known to prison officials, he was "left on B Facility," which plaintiff claims is not adequate for inmates with mental problems. He also stated that defendant Scicluna had plaintiff moved from his assigned cell on August 14, 2002, "just to give my cell to two (2) Latinos for convenience." Plaintiff also stated in this grievance that defendants Murphy and Lytle placed him in cuffs and put him in a holding cell when he refused to comply. Plaintiff stated that he informed defendants Murphy and Lytle that he felt suicidal. Finally, plaintiff stated that prison staff failed to notify medical personnel of his mental health crisis on August 14, 2002, and that this resulted in his attempted suicide. Plaintiff did not assert that excessive force was used during the course of the cell move. Specifically, there is no mention of shackles being too tight or of plaintiff being dragged across the floor. In addition, there is no description of any physical injuries.

Based on the September 2, 2002, grievance, the court finds that plaintiff has adequately exhausted his Eighth Amendment claim based on denial of mental health care. It is clear that the gravamen of this aspect of the grievance was that prison officials were aware of his mental health problems and that, when informed on August 14, 2002, that plaintiff felt suicidal (presumably as a result of the cell extraction), he was not given any medical care. According to plaintiff, he attempted suicide as a result. The grievance is, therefore, consistent with the allegations in the fourth amended complaint.

Plaintiff did not, however, exhaust his administrative remedies as to an excessive force claim prior to filing suit. There is nothing in the September 2, 2002, grievance concerning excessive force or physical injuries suggesting excessive force. In his opposition to defendants' motion, plaintiff begins by asserting that prison officials are hindering his access to the court and

complains that this court has done nothing about it.² He also states in his opposition that he is asserting two claims – one based on "denial of access to readily-available mental health treatment services" and one based on religious dietary needs. As to excessive force, plaintiff states:

> For, I suppose, purposes of trial strategy, defense counsel has gifted plaintiff with a third and non-existent cause of action. . . Defense counsel asserts that my first allegation . . . is the use of excessive force. . . . The problem here, Judge Kellison, is that I have made no such allegation as is put forth as my first cause of action, and the record remains devoid of such.

Based on this statement, and notwithstanding allegations in the fourth amended complaint concerning excessive force and physical injuries, plaintiff has now made it clear that the only Eighth Amendment claim he is asserting in this case is one based on denial of medical care on August 14, 2002. In any event, and as plaintiff admits, the record demonstrates that plaintiff has not exhausted any excessive force claim.

### IV.  CONCLUSION

The court concludes that plaintiff has exhausted his First Amendment claim based on denial of religious dietary needs. As to plaintiff's Eighth Amendment claim, it is clear from plaintiff's opposition to defendants' motion to dismiss that he is asserting a claim based on denial of mental health treatment only. The court concludes that this claim is exhausted. According to plaintiff, the fourth amended complaint does not assert an excessive force claim. Further, the court concludes that plaintiff has not exhausted a claim based on excessive force because, as plaintiff admits, he never filed such a grievance.

---

² As to this latter assertion, the court has ruled that plaintiff will not be permitted to expand the scope of this lawsuit to include additional claims. However, that is not to say that plaintiff does not have a remedy available to him via a separate § 1983 action alleging interference with access to the courts. The court reiterates that this case does not involve a claim based on denial of access to the courts.

All defendants named in the fourth amended complaint have been served and have appeared in the action. Both claims raised were exhausted prior to suit being filed. It is clear that this court has subject matter jurisdiction and defendants have not asserted any other basis for dismissal. Therefore, defendants should be required to file an answer forthwith so that this case may finally be at issue and proceed to discovery.

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss be denied; and

2. Defendants be required to file an answer to the fourth amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 2, 2007.

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE