1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  BARRY LAMON,                         No. CIV S-03-0423-FCD-CMK-P

12              Plaintiff,

13      vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14  C.K. PLILER, et al.,

15              Defendants.

16  _____/

17          Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18  to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for judgment on the

19  pleadings (Doc. 156), which the court construes as a motion to dismiss.

20

21                      **I.  BACKGROUND**

22          Plaintiff names the following six individuals as defendants: Pliler; Hawthorne;

23  Murphy; Lytle; Loredo; Scicluna.  Plaintiff states that he has a long and well-documented history

24  of mental health treatment and that he was a participant in the prison "Mental Health Delivery

25  System."  Plaintiff alleges that, prior to August 14, 2002, defendants Loredo, Murphy, Lytle, and

26  Scicluna were aware that he was a high risk for suicide attempts.  According to plaintiff, on

1

August 14, 2002:

> . . . [Defendant] Scicluna had be involuntarily moved from my assigned cell . . . to [another cell] solely as a favor for another inmate and, when I refused to comply, Defendants Lytle, Murphy, and Scicluna had me physically overwhelmed, shackled hand and foot, and physically dragged from the housing area and deposited in a security holding cage.

Plaintiff says that he was left in the holding cell for over two hours, with the shackles "applied so tightly . . . that my hands and feet were swollen and my wrists and ankles were visibly cut and bleeding." Plaintiff alleges that he complained to defendants Lytle, Murphy, and Scicluna of pain caused by the shackles, but that they refused to loosen the restraints and instead "made racist, derogatory, and threatening comments." Plaintiff states that, as the pain became worse, be shouted to defendants Lytle, Murphy, and Scicluna that he needed to see a prison psychologist because he was feeling suicidal.

Plaintiff claims that defendant Loredo arrived later in the day and was briefed by the other defendants that plaintiff had been "trying to get mental health involved all morning." Plaintiff states that he was finally escorted back to the cell to which defendant Scicluna originally wanted him moved. According to plaintiff, while he was being moved he shouted that he was going to kill himself and that defendant Murphy responded: "Go ahead. Do us the fucking favor." Plaintiff states that defendant Loredo responded: "That's just gonna get you dead. It still won't get your cell back." Plaintiff states that there was no legitimate penological reason to justify the "non-necessary cell-change." He also states that "Defendants Murphy, Lytle, Loredo, and Scicluna denied me access to doctor-prescribed and readily-available mental health and medical services by refusing to call a doctor(s)." Plaintiff states that defendants acted despite their knowledge that he was a high risk for suicide attempts.

Plaintiff alleges the following injuries caused by defendants' conduct: (1) physical injuries to his wrists and ankles caused by the shackles; (2) carbon monoxide poisoning resulting in headaches; (3) minor burns; (4) loss of personal property caused by the cell change; (5) mental decompensation and stress; and (6) loss of constitutional rights. As to legal claims, plaintiff

1  specifically states that defendants Lytle, Murphy, Loredo, and Scicluna "caused unnecessary and

2  wanton infliction of pain and physical injury. . ." and asserts a claim against these defendants

3  under the Eighth Amendment.

4        Plaintiff also claims that he was denied a religious diet.  Specifically, plaintiff

5  alleges that defendants Pliler and Hawthorne were implementing a policy to deny "any kind of

6  diet modifications based on religious need."  Plaintiff states that he lost more than 50 pounds as a

7  result of a lack of access to religiously acceptable meals.  Based on these facts, plaintiff asserts a

8  claim against defendants Pliler and Hawthorne under the First Amendment.

9

10  ## II.  DISCUSSION

11        Defendants argue that plaintiff's claim that he was denied a religious diet is barred

12  by the doctrine of res judicata because it has already been litigated.  In particular, defendants

13  assert that this claim was litigated in the context of a state habeas corpus petition filed on July 25,

14  2002, in the Sacramento County Superior Court and an appeal from a final decision in that case

15  filed on June 20, 2007, which was ultimately denied on the merits.  As revealed in plaintiff's

16  appeal, plaintiff asserted:

17        On April 29, 2002, I filed and exhausted an inmate appeal, Log No. SAC-
      B-02-01089 . . ., alleging that respondents were denying me a religious

18        diet.  On August 13, 2002, Sacramento County Superior Court Judge Fall
      denied my petition for writ of habeas corpus on the incorrect assertion that

19        I had not consulted the Rabbi is false and was not raised by prison officials
      until my appeal was at the last level of review and too late for me to

20        respond to. . . .

21  Plaintiff further claimed:

22        Plaintiff respectfully requests that the Third District Court of Appeal
      modify, amend, or vacate the August 13, 2002, Order by Superior Court

23        Judge Fall to allow the Petitioner, who is acting in persona pro se in a
      federal action, to proceed on this federal action, and not be collaterally

24        estopped from raising the issue of the religious diet deprivation which
      continued for four (4) years [after] Superior Court Judge Gretta Fall

25        inaccurately stated Petitioner's failure to contact the Prison Rabbi as the
      grounds for her dismissal.

26

1  Defendants note that the inmate grievance references in his state court action is the same

2  referenced in the instant action.

3         Under the doctrine of res judicata, or claim preclusion, an action may be barred

4  where an earlier action involved the same claim and parties, and reached a final judgment on the

5  merits.  See Nordhorn v. Ladish Co, Inc., 9 F.3d 1402, 1404 (9th Cir. 1993).  A decision in a

6  prior federal habeas corpus action under 28 U.S.C. § 2254 can have preclusive effect in a

7  subsequent civil rights action under 42 U.S.C. § 1983.  See Hawkins v. Risley, 984 F.2d 321, 323

8  (9th Cir. 1992).  Thus, a subsequent § 1983 action is barred if the identical claim was raised in a

9  prior § 2254 case.  See id.  Similarly, under the doctrine of collateral estoppel, or issue

10  preclusion, any issue necessarily and finally decided in an earlier action may not be relitigated in

11  a later case involving a party to the prior action.  See Allan v. McCury, 449 U.S. 90, 94 (1980);

12  see also Hawkins, 984 F.2d at 325.

13         Here, it is clear that plaintiff's religious diet claim was litigated in the context of

14  the prior state habeas corpus action, which proceeded to a final judgment.  Plaintiff recognized as

15  much in his state court case by seeking an order determining that preclusion would not apply to

16  bar the claim in the instant federal action.  Because the religious diet claim is barred, plaintiff

17  cannot raise the same claim in this case and it should be dismissed.[1]  Further, because defendants

18  Pliler and Hawthorne are only named with respect to this claim, they should be dismissed as

19  defendants to this action.

20  / / /

21  / / /

22  / / /

23  / / /

24

25      [1]  Defendants' motion should be construed as a motion to dismiss for failure to state a claim based on denial of a religious diet.  See Scott v. Kuhlman, 746 F.2d 1377, 1378 (9th Cir. 1984) (holding that preclusion is the proper subject of a motion to dismiss for failure to state a claim upon which relief can be granted).

26

4

**III.  CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion for judgment on the pleadings (Doc. 156) be construed as a motion to dismiss and, so construed, that it be granted;

2.      Plaintiff's religious diet claim be dismissed, with prejudice; and

3.      Defendants Pliler and Hawthorne be dismissed as defendants to this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  December 18, 2007


_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

5